## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: _____

UNITED STATES OLYMPIC AND PARALYMPIC COMMITTEE,
a federally chartered corporation,

      Plaintiff,

v.

PUMA SE, a German limited liability company; and
PUMA NORTH AMERICA, INC., a Delaware corporation,

      Defendants.

---

## COMPLAINT AND JURY DEMAND

---

The U.S. Olympic and Paralympic Committee ("USOPC" or "Plaintiff"), by and through its counsel, brings this action for trademark infringement, unfair competition, and declaratory relief against Defendants PUMA SE ("PUMA SE") and PUMA North America, Inc. ("PUMA NA") (collectively referred to herein as "Defendants" or "PUMA"), to stop Defendants from using and further attacking the USOPC's TOKYO 2020 mark, as well as its BEIJING 2022 and PARIS 2024 trademarks, and by and for its Complaint alleges as follows:

### NATURE OF THE ACTION

1.     This is an action for trademark infringement and unfair competition arising under the Ted Stevens Olympic and Amateur Sports Act, 36 U.S.C. § 220506(a) (the "Ted Stevens Act" or the "Act"); the trademark laws of the United States, 15 U.S.C. § 1051, *et seq.*; Colo. Rev. Stat. § 6-1-101 *et seq.*; and the common law of Colorado; and a declaratory judgment action pursuant to 28 U.S.C. § 2201 seeking a declaration that the Challenged Games Marks Registrations (as defined below) are valid and enforceable.

## PARTIES

2.      Plaintiff USOPC is a federally chartered corporation with its principal place of business at One Olympic Plaza, Colorado Springs, Colorado 80909.  The USOPC is the non-profit entity that is responsible for sending U.S. athletes to the Olympic Games. It is also the entity that owns the trademarks being challenged by Defendant PUMA SE.

3.      Defendant PUMA SE is a company organized and existing under the laws of Germany, located and doing business at PUMA Way 1, Herzogenaurach, Germany 91074. It makes and sells footwear, athletic apparel, and athletic equipment throughout the United States, including in the District of Colorado, via online retailers and Puma-branded brick-and-mortar stores.

4.      Defendant PUMA North America, Inc. is a Delaware corporation with its primary place of business at 10 Lyberty Way, Westford, Massachusetts 01886. PUMA North America is an affiliate of PUMA SE, and acts as PUMA SE's U.S. distribution and sales arm in the United States.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over USOPC's federal claims under 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1338(a), 2201, as this case presents an actual controversy involving federal questions arising under the Lanham Act and the Ted Stevens Act.

6.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367(a) because those claims are joined with substantial and related claims under the Lanham Act, and are so related to the claims under the Lanham Act that they form part of the same case or controversy.

7.      This Court has personal jurisdiction over Defendant PUMA SE because it has substantial and specific contacts with the United States and this District by virtue of, among other things, (1) its filing of trademark applications with the United States Patent and Trademark Office ("U.S.P.T.O.") for marks that are intended to associate PUMA and its products with the USOPC and the Olympic Games without being an official sponsor of the Olympic Games in the U.S., (2) filing petitions to cancel seven trademark registrations for Olympic Games marks owned by the USOPC, a Colorado entity, (3) filing a trademark opposition against a trademark application owned by the USOPC, (4) communicating with the USOPC's in-house counsel in Colorado through PUMA NA with respect to PUMA SE's trademark application and intended use, (5) previously availing itself of United States District Courts in order to enforce its intellectual property rights; (6) selling footwear, athletic apparel, and athletic equipment throughout the United States, including in the District of Colorado, via online retailers and Puma-branded brick-and-mortar stores; and (7) entering into "numerous sponsorship and endorsement deals with athletes and teams who will compete in the Olympic Summer Games which had been scheduled to occur in Tokyo, Japan in the year 2020, but that due to the COVID19 pandemic are currently scheduled to be held in Tokyo in the year 2021," and "with athletes and teams who will compete in the Olympic Winter Games planned to take place in Beijing, China, in the year 2022" and "with athletes and teams who will compete in the Olympic Summer Games planned to take place in Paris, France, in the year 2024." Defendant PUMA SE has also availed itself of the benefits and protections of this District and has substantial contacts with this forum through the business activities of its fully owned U.S. subsidiary Defendant PUMA North America, Inc.

8.     This Court has personal jurisdiction over Defendant PUMA North America, Inc. because it has availed itself of the benefits and protections of this District and has substantial contacts with this forum through business activities and otherwise, including the promotion and sale of PUMA products throughout this District and the operation of Puma stores in this District., namely the Puma store at the Outlets at Castle Rock, 5050 Factory Shops Blvd., Castle Rock, CO 80108, and the Puma Outlet Store at Denver Premium Outlets, 13081 Grant Street, Space 315, Thornton, CO 80023.

9.     Venue is proper pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims stated herein occurred in this District.

## BACKGROUND

### The USOPC's Mission, Structure, Financial Model, and Statutory Protection

10.     The USOPC serves as both the National Olympic Committee ("NOC") and the National Paralympic Committee for the United States.  In its role as a NOC, the USOPC promotes the tenets of Olympism, as embodied in the Olympic Charter. Such tenets include the practice of sport without discrimination, and competition with a spirit of goodwill, solidarity, and fair play. The USOPC serves as a steward for the Olympic and Paralympic movements in the United States and is responsible for fielding U.S. teams for the Olympic, Paralympic, Youth Olympic, Pan American and Parapan American Games.

11.     The USOPC exists to empower Team USA athletes to achieve sustained competitive excellence and well-being. Approximately 82% of the USOPC's budget has a direct impact on its mission of supporting athletes via a variety of programs for both athletes and their National Governing Bodies. In addition to performance grants and rewards, additional support is provided in the form of training facilities, sports medicine and science, coaching education,

health insurance, promotional opportunities, education and career services, outfitting and travel, and safe sport and anti-doping programming.

12.   Additionally, the USOPC oversees the process by which U.S. cities bid to host the Olympic and Paralympic Games, the Youth Olympic Games or the Pan and Parapan American Games, while also playing a supporting role in the bid processes for hosting a myriad of other international competitions. Further, the USOPC approves the U.S. trials sites and procedures for the Olympic, Paralympic, Youth Olympic, Pan American and Parapan American Games team selections.

13.   As set forth in the Olympic Charter, the USOPC is obligated to protect Olympic intellectual property in the United States for the benefit of the Olympic Movement. In recognition and furtherance of the scope of the USOPC's responsibilities and undertakings, Congress granted the USOPC the exclusive right to use and control the use of Olympic terminology and imagery within the United States. *See* The Ted Stevens Olympic and Amateur Sports Act, 36 U.S.C. § 220506(a).

14.   The Ted Stevens Act authorizes the USOPC to file a civil action against the unauthorized use "for the purpose of trade, to induce the sale of any goods or services, or to promote any theatrical exhibition, athletic performance, or competition…[of] any trademark, trade name, sign, symbol, or insignia falsely representing association with, or authorization by" the USOPC or its affiliates. 36 U.S.C. § 220506(c).

15.   The intent of Congress in granting the USOPC exclusivity over the Olympic brand was to generate revenue to finance the United States' involvement in the Olympic Games. Although Congress charged the USOPC with the responsibility to finance U.S. participation in the Olympics, the USOPC does not receive financial assistance from the United States

Government. *See U.S. Olympic Comm. v. Intelicense Corp., S.A.*, 737 F.2d 263, 266 (2d Cir. 1984) ("the USOC is the *only* NOC [National Olympic Committee] that does not receive formal financial assistance from the Government" (emphasis added)).

16.     As the United States Supreme Court has explained, the unambiguous intent of Congress in granting the USOPC exclusivity over the Olympic brand is to generate revenue to finance the United States' involvement in the Olympic Games. *See San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522 (1987). "[I]t is clear that the Congressional intent in enacting [the Act] was to promote the United States Olympic effort by entrusting the USOC with unfettered control over the commercial use of Olympic-related designations" to "facilitate the USOC's ability to raise those financial resources from the private sector that are needed to fund the United States Olympic Movement." *Intelicense Corp.*, 737 F.2d at 266.

17.     The USOPC raises the money it needs to operate by, in large part, licensing use of its intellectual property to sponsors and licensees. These legitimate license fees pay to house, feed, train, and otherwise support U.S. Olympic athletes, and finance this country's participation in the Olympic Games.

### Olympic Game Host City and Year Marks

18.     Among the most iconic of the Olympic brands are the marks that combine the name of a host city with the year when the Olympic games will take place in that city (the "Games Marks"). The USOPC and its affiliates have a long tradition of branding the Olympic Games with Games Marks. Famous Games Marks include, among others: LAKE PLACID 1980, LOS ANGELES 1984, BARCELONA 1992, LILLEHAMMER 1994, ATLANTA 1996, NAGANO 1998, SYDNEY 2000, SALT LAKE CITY 2002, BEIJING 2008, VANCOUVER 2010, LONDON 2012, SOCHI 2014, and RIO 2016.

19.     The Local Organizing Committees in Tokyo, Japan, Beijing, China, and Paris, France, won the bids for upcoming Olympic Games that were originally scheduled to occur in 2020, 2022 and 2024, respectively. With each announcement, a new Games Mark was created that instantly became associated with the USOPC and the Olympics: TOKYO 2020, BEIJING 2022, and PARIS 2024. Given the exceptional worldwide interest in, and media coverage of, the host city's election process and election event, the Games Marks immediately gain a great deal of notoriety and fame.

20.     Due to the COVID-19 Pandemic, the International Olympique Committee ("IOC"), in conjunction with the Tokyo Organizing Committee for the Olympic Games, Tokyo City, and the Government of Japan, postponed the TOKYO 2020 Olympic Games, which were scheduled to take place in Tokyo, Japan in the summer of 2020.

21.     The IOC announced the decision to postpone the games on March 24, 2020. The postponed TOKYO 2020 Olympic Games are scheduled to begin on July 23, 2021.

22.     The Tokyo Olympic Games will remain branded TOKYO 2020.

23.     The BEIJING 2022 Olympic Games and PARIS 2024 Olympic Games are expected to occur without postponement or delay.

24.     The USOPC has undertaken considerable efforts to promote the TOKYO 2020, BEIJING 2022, and PARIS 2024 games, including securing trademark registrations for each, entering into sponsorship and licensing deals with third parties to promote the Olympic Games, Olympic athletes and their sponsors, and securing contracts with service providers hotels and others to transport, house, and feed the athletes during the Olympic Games.

25.     The USOPC also owns several federal trademark registrations on the Principal Register for Games Marks, including the following registrations for the next three Olympic Games referred to herein after as the "Future Games Marks":

| MARK | REGISTRATION NO. |
|---|---|
|  | 5216935 (Exhibit A) |
| TOKYO 2020 | 4662320 (Exhibit B) |
| TOKYO 2020 | 4256535 (Exhibit C) |
|  | 5743425 (Exhibit D) |
| BEIJING 2022 | 4644721 (Exbibit E) |
| BEIJING 2022 | 5802984 (Exhibit F) |
| PARIS 2024 | 5117654 (Exhibit G) |
| PARIS 2024 | 6050531 (Exhibit H) |

26.     True and correct copies of the above registrations, as printed from the U.S.P.T.O. website, are attached hereto as Exhibits A-H. These trademark registrations for the Future Games Marks include many of the services that both the USOPC and PUMA provide, including "promotion of products and services of third parties through sponsoring arrangements and

license agreements relating to international sports' events" and "promoting the goods and services of others by means of contractual agreements, namely, arranging for sponsors to affiliate their goods and services with an awards program, a sports competition and sporting activities and licensing agreements relating to international sports' events to enable partners to gain additional notoriety and/or image derived from those of cultural and sporting events, in particular international sporting events." The registrations also cover footwear and apparel in Class 25, athletic bags in Class 18, sporting equipment in Class 28, as well as various other goods and services provided by the TOP Sponsors of the Olympic Games.

27.     The USOPC's uses and registrations of the Games Marks create trademark rights in the Games Marks that are subject to enforcement under the Ted Stevens Act, the Lanham Act, and trademark laws of the State of Colorado.

28.     By operation of law, the USOPC registrations constitute *prima facie* evidence of the validity of the marks and of the USOPC's exclusive right to use the marks.

29.     Based on the extensive and long-term practice of using Games Marks to identify the Olympic Games, the general public has come to recognize a brand that includes the Olympic host city and the year in which the Olympics are held there, as identifying and being associated with the USOPC and the Olympic Games. As such, the protections of the Act, which includes "any trademark, trade name, sign, symbol, or insignia falsely representing association with, or authorization by, the International Olympic Committee, the International Paralympic Committee, the Pan-American Sports Organization, or the corporation" extends to such marks. *See* Act.

30.     The Trademark Trial and Appeal Board has specifically recognized that Games Marks uniquely identify the USOPC. For example, in assessing the validity of the Games Mark SYDNEY 2000, the Board reasoned as follows:

> [W]e find sufficient evidence properly in the record clearly indicating that there
> has been widespread publicity for the Olympic Games so that we can conclude
> that the Olympic Games are well known to the general public; and that the general
> public is likely to be well aware that the 2000 Olympic Games will be taking
> place in Sydney, Australia. Thus, while the general public in the United States
> may or may not have seen the upcoming Olympic Games referred to precisely as
> "Sydney 2000," we have no doubt that the general public in the United States
> would recognize this phrase as referring unambiguously to the upcoming Olympic
> Games in Sydney, Australia, in the year 2000.

*In re. Urbano*, 51 USPQ2d 1776, 1779-80 (TTAB 1999).

**Only TOP Olympic Sponsors Can Use Games Marks**

31.     The USOPC and its affiliates utilize a two-tier sponsorship model consisting of

domestic sponsors and global sponsors. The global sponsorship level is referred to as The

Olympic Partner (TOP) Programme ("TOP Sponsors").

32.     TOP Sponsors are authorized by the USOPC, in the United States, to utilize a

portion of USOPC Intellectual Property, including the Games Marks. TOP Sponsors are the only

sponsors allowed to commercially use the Games Marks because they are among the most

valuable and coveted of the Olympic Games trademarks.

33.     TOP Sponsors span a wide range of commercial activities and direct their

provisions to a wide range of consumers. Accordingly, these TOP Sponsors typically activate

Games Marks across an expansive spectrum of goods and services on a nationwide level.  A list

of TOP Sponsors can be seen at the following link: https://www.olympic.org/partners.

34.     Some of the services that the USOPC provides include entering into sponsorship

and promotional agreements to promote the Olympic Games and facilitate the ability of athletes

to enter into sponsorship deals with others.  TOP Sponsors are also allowed, pursuant to a license

with USOPC, to use the Games Marks in association with their business and on Premium

products. Premium products can be any merchandising items and may include apparel, bags, and commemorative toys or equipment.

35.     TOP Sponsors are critical to the financial health and stability of the USOPC. These TOP Sponsors contribute significant financial resources to the Olympic Movement and are essential to the United States' successful and safe participation in the Olympic Games, including the housing, feeding, training, and support of U.S. Olympic athletes who attend the Olympic Games.

36.     USOPC's ability to protect Games Marks is paramount to the viability of the TOP Programme. A free-for-all system in which any company could associate its products with the Games Marks or the Olympic brand would necessarily dilute the value of USOPC sponsorships, and directly affect the ability of U.S. Olympic athletes to obtain the necessary support to represent the U.S. in the Olympic Games, including the necessary housing, feeding, and training, and would violate the Ted Stevens Act.  Unauthorized use of USOPC intellectual property, such as undertaken by Puma, ambushes the USOPC and its intellectual property rights.

37.     The United States Senate has explicitly recognized that ambush marketing of the Olympics exists, that it harms the USOPC and that it violates the law. Specifically, the Senate said:

> Whereas, in recent years, a number of entities in the United States have engaged in marketing strategies that appear to affiliate themselves with the Olympic and Paralympic Games without becoming official sponsors of Team USA;
>
> Whereas any ambush marketing in violation of the Lanham Act (15 U.S.C. 1051 et seq.) undermines sponsorship activities and creates consumer confusion around official Olympic and Paralympic sponsors; and
>
> Whereas ambush marketing impedes the goals of the Ted Stevens Olympic and Amateur Sports Act (36 U.S.C. 220501 et seq.) to fund the United States Olympic and Paralympic teams through official sponsorships: Now, therefore, be it Resolved, That it is the sense of the Senate that—

      (1) official sponsor support is critical to the success of Team USA at all
international competitions; and
      (2) ambush marketing adversely affects the United States Olympic and
Paralympic teams and their ability to attract and retain corporate sponsorships.

*See* U.S. Senate Resolution 289 of 2014 (289 SOCHI 2014).

### PUMA's Infringing Marks and Attack on Future Games Marks

38.     PUMA has declared war on Games Marks, tried to register them for itself, and petitioned to cancel Games Marks registrations. PUMA's declaration of war on the Games Marks is a thinly veiled attempt to benefit from association with the Olympics without becoming a TOP Sponsor.

39.     On March 24, 2020, the same day that the IOC announced the delay of TOKYO 2020 Olympic Games, PUMA SE filed U.S. Application Serial No. 88/846,322 for the mark PUMA TOKYO 2021 covering apparel, athletic equipment, and bags in international classes 18, 25, and 28 ("PUMA TOKYO 2021 Application"). A copy of the PUMA TOKYO 2021 Application is attached hereto as Exhibit I.

40.     Upon submitting the PUMA TOKYO 2021 Application, PUMA SE attested that it had a "bona fide intention, and is entitled, to use the mark in commerce on or in connection with the identified goods/services" (hereinafter, "ITU Affidavit"). *See* Exhibit I.

41.     Upon learning of the PUMA TOKYO 2021 Application, the USOPC contacted PUMA objecting to its application for the mark PUMA TOKYO 2021 and its intended use of the same.

42.     In response, PUMA SE refused to withdraw the PUMA TOKYO 2021 Application and refused to refrain from using the PUMA TOKYO 2021 mark.

43.     On March 31, 2020, PUMA SE filed U.S. Application Serial No. 88/854,509 as an intent to use application for the mark PUMA TOKYO 2022 covering apparel, athletic equipment, and bags in international classes 18, 25, and 28 (hereinafter "PUMA TOKYO 2022 Application"). PUMA SE made an ITU Affidavit upon submission of the PUMA TOKYO 2022 Application. A copy of the PUMA TOKYO 2022 Application is attached hereto as Exhibit J.

44.     On April 24, 2020, the U.S.P.T.O. refused registration of the PUMA TOKYO 2021 Application and PUMA TOKYO 2022 Application as likely to cause confusion with USOPC's registrations and as creating a false connection with the USOPC.

45.     On June 10, 2020, PUMA SE filed U.S. Application Serial No. 88/958,308 for the mark PUMA BEIJING 2022 covering apparel, athletic equipment, and bags in international classes 18, 25, and 28 (hereinafter "PUMA BEIJING 2022 Application"). PUMA SE made an ITU Affidavit upon submission of the PUMA BEIJING 2022 Application. A copy of the PUMA BEIJING 2022 Application is attached hereto as Exhibit K.

46.     On June 10, 2020, PUMA SE also filed U.S. Application Serial No. 88/958,322 as an intent to use application for the mark PUMA PARIS 2024 covering apparel, athletic equipment, and bags in international classes 18, 25, and 28 (hereinafter "PUMA PARIS 2024 Application"). PUMA SE made an ITU Affidavit upon submission of the PUMA PARIS 2024 Application. A copy of the PUMA PARIS 2024 Application is attached hereto as Exhibit L.

47.     U.S. Application Serial Nos. 88/846,322, 88/854,509, 88/958,308, and 88/958,322 hereinafter are collectively referred to as the "Infringing Applications."

48.     On July 15, 2020, the U.S.P.T.O. refused registration of the PUMA BEIJING 2022 Application and PUMA PARIS 2024 Application as likely to cause confusion with USOPC's registrations and application and as creating a false connection with the USOPC.

49.     Facing refusal of its attempt to own the Games Marks, PUMA SE initiated numerous trademark cancellation actions and one opposition action at the TTAB against Future Games Marks of the USOPC.  Specifically, PUMA SE filed Cancellation No. 92075583 against the USOPC's TOKYO 2020 registrations, a copy of which without its associated exhibits is attached hereto as Exhibit M; Cancellation No. 92075682 against the USOPC's BEIJING 2022 registrations, a copy of which without its associated exhibits is attached hereto as Exhibit N; Cancellation No. 92075679 against one of the USOPC's PARIS 2024 registrations, a copy of which without its associated exhibits is attached hereto as Exhibit O; Cancellation No. 92075676 against another of the USOPC's PARIS 2024 registrations, a copy of which without its associated exhibits is attached hereto as Exhibit P; and Opposition No. 91265809 against the pending PARIS 2024 application, a copy of which without its associated exhibits is attached hereto as Exhibit Q. The Cancellation Actions and Trademark Opposition are collectively referred to as the "TTAB Proceedings."  The trademark registrations and application of the USOPC that PUMA has attacked are collectively referred to herein as the "Challenged Games Marks Registrations."

50.     In each of the TTAB Proceedings, PUMA SE claimed that the Challenged Games Marks Registrations are invalid, that PUMA has entered into numerous sponsorship and endorsement deals with athletes and teams that are competing in the Olympic Games, and that it allegedly needs to use Games Marks in order to promote the fact that it sponsors such athletes. See Exhibits L, M, N, O and P.  In the '682 Cancellation and '583 Cancellation, PUMA SE also pled that Plaintiff has abandoned U.S. Registration No. 5,216,935 for the mark TOKYO 2020 and U.S. Registration No. 4,644,721 for the mark BEIJING 2022.

51.     In the TTAB Proceedings, PUMA SE pleads that "in connection with its business, Puma endorses, sponsors, and supplies amateur and professional athletes with sporting goods, apparel, and shoes," that it "has numerous sponsorship and endorsement deals with athletes and teams around the world, including those that compete in both the winter and summer Olympic Games ('Sponsored Athletes')", and that "Puma specifically designs and manufactures sporting goods, apparel, and shoes for use by the Sponsored Athletes while competing in the Olympic Games." *See* Exhibit M, ¶¶ 2, 3 and 4; Exhibit N, ¶¶ 2, 3 and 4; Exhibit O, ¶¶ 2, 3 and 4; Exhibit P, ¶¶ 2, 3 and 4; and Exhibit Q, ¶¶ 2, 3 and 4.

52.     PUMA SE further pleads that it "needs to be able to use the 'HOST CITY' plus 'YEAR' designation in connection with the promotion and sale of its anticipated Specially-Made Apparel" and "has entered or plans to enter into numerous sponsorship and endorsement deals with athletes and teams who will compete in the [upcoming Olympic Games]." *See* Exhibit M, ¶ 6; Exhibit N, ¶ 6; Exhibit O, ¶ 6; Exhibit P, ¶ 6; and Exhibit Q, ¶ 6 (emphasis added).

53.     The USOPC filed motions to dismiss each of the Cancellation Proceedings, arguing that Puma failed to state claims upon which relief can be granted. The motions to dismiss are pending and each of the TTAB Proceedings is suspended

54.     Upon information and belief, PUMA's attack on Future Games Marks is not limited to the United States. In fact, PUMA SE has sought to secure trademark rights in Future Games Marks for itself in numerous countries around the world. Attached hereto as Exhibit R is a summary of trademark applications filed by PUMA SE for Future Games Marks. This orchestrated global attack on Future Games Marks destabilizes the foundation of USOPC's financial structure and threatens the ability of the USOPC to deliver on its mission, which includes the direct financial support of U.S. Olympic athletes.

55.     Upon information and belief, PUMA has used and intends to use each of the PUMA TOKYO 2021, PUMA TOKYO 2022, PUMA BEIJING 2022, and PUMA PARIS 2024 marks ("Infringing Marks") to compete with USOPC sponsors and licensees, causing irreparable damage to the USOPC.

56.     With Opening Ceremonies scheduled to begin in less than six months for the TOKYO 2020 Olympic Games, USOPC needs to ensure the strength of the Future Games Marks and confirm the validity of the Challenged Games Marks Registrations.

57.     For the purposes of clarity, the USOPC and its affiliates permit equipment manufacturers, such as PUMA, to sponsor athletes who compete in the Olympic Games, and to provide such athletes with athletic equipment and apparel that they may wear on the field of play. Guidelines for such use were developed in consultation with the sports apparel and sports equipment manufacturer community, including PUMA. These guidelines permit manufacturer branding on equipment and apparel, but limit such branding to the normal display of the manufacturer's trademark in conjunction with placement and size restrictions. However, these guidelines expressly prohibit PUMA and other manufacturers from associating the Games Marks with their companies.

58.     Upon information and belief, PUMA is aware that, by sponsoring individual athletes, PUMA obtains no license to use the Games Marks.

59.     Upon information and belief, PUMA is aware that the guidelines include an express restriction on use of the Games Marks. Nonetheless, PUMA has unilaterally decided that it "needs" to falsely associate itself with USOPC and the Olympic Movement. In fact, PUMA has no need to use the Future Games Marks to activate its sponsorship of, or provide such items to, individual athletes. The only "need" for PUMA to use Future Games Marks is to

illegitimately create a false association with the USOPC and the Olympic Games in a manner that undermines the official Olympic sponsorship-based funding programmes and infringes on the Future Games Marks.

60. Upon information and belief, PUMA has launched and begun carrying out its plan to infringe the USOPC's Future Games Marks, including attacking registrations owned by the USOPC, designing and promoting uses of the USOPC's Games Marks for PUMA's unaffiliated products and services, and entering into sponsorship agreements and endorsement deals with athletes and teams who will compete in the Olympics. *See* Exhibit M, ¶¶ 3, 4 and 7; Exhibit N, ¶¶ 3, 4 and 7; Exhibit O, ¶¶ 3, 4 and 7; Exhibit P, ¶¶ 3, 4 and 7; and Exhibit Q, ¶¶ 3, 4 and 7.

61. Upon information and belief, PUMA has negotiated, discussed, and/or entered into licensing deals including or relating to the Infringing Marks. *Id.*

62. Upon information and belief, PUMA has negotiated, discussed, and/or entered into endorsement deals including or relating to the Infringing Marks. *Id.*

63. Upon information and belief, PUMA has negotiated, discussed, and/or entered into sponsorship deals including or relating to the Infringing Marks. *Id.*

64. Upon information and belief, PUMA has designed uses of the Infringing Marks and Specially-Made Apparel, which include or feature the Infringing Marks. Attached hereto as Exhibit S is a true and correct copy of PUMA artwork commissioned and used by PUMA in order to deceive consumers into thinking PUMA is a TOP Sponsor of the TOKYO 2020 Olympic Games. The PUMA artwork is a derivative work and intentional reference to the fireworks artwork used in connection with the TOKYO 2020 Olympic Games as shown in Exhibit T.

65.     Upon information and belief, PUMA has secured manufacturers to produce the Specially-Made Apparel, which includes or features the Infringing Marks.

66.     Upon information and belief, these sponsorship and endorsement deals include use of the Infringing Marks. *Id.*

67.     Upon information and belief, PUMA NA and PUMA SE have and will continue to distribute, sell, promote, license, and/or advertise Specially-Made Apparel, which includes or features the Infringing Marks, in the United States, unless enjoined by this Court.

68.     If PUMA is permitted to attack the USOPC's Future Games Marks and continue to use the Infringing Marks, consumers will mistakenly assume that Defendants are associated with, sponsored by, or otherwise affiliated with the USOPC and/or the Olympic Games, thereby infringing the USOPC's valuable trademark rights and harming the goodwill the USOPC has developed in the Future Games Marks and the Challenged Games Marks Registrations. Such false association will affect the reputation and goodwill in the Future Games Marks and will adversely affect the USOPC's ability to carry out its responsibilities in fulfillment of its mission.

**FIRST CAUSE OF ACTION**
**Violation of the Ted Stevens Olympic and Amateur Sports Act 36 U.S.C. § 220506**

69.     The allegations in all preceding paragraphs are incorporated herein by reference.

70.     Pursuant to The Ted Stevens Olympic and Amateur Sports Act, 36 U.S.C. §220501(c)(4), the USOPC may file a civil action against a person for the remedies provided in the Lanham Act if the person, without the consent of the USOPC, uses for the purpose of trade, to induce the sale of any goods or services, or to promote any theatrical exhibition, athletic performance, or competition, any trademark, trade name, sign, symbol, or insignia falsely representing association with, or authorization by, the USOPC or its affiliates.

71.     As described above, PUMA is and intends to continue engaging in the unauthorized commercial use of the Infringing Marks, thereby falsely representing association with or authorization by the USOPC, its affiliates, and/or the Olympic Games.

72.     PUMA's use and intended use of the Infringing Marks on the goods identified in its trademark applications is and will continue to be without the authorization of the USOPC and violates and will continue to violate the Ted Stevens Olympic and Amateur Sports Act.

73.     The Infringing Marks are likely to cause confusion, mistake, and deception among consumers as to the origin and quality of the products bearing the Infringing Marks, as consumers are likely to believe that Defendants' products and activities are authorized by, licensed or endorsed by, or associated with the USOPC, its affiliates, and/or the Olympic Games.

74.     An actual and live controversy has arisen and currently exists between the parties regarding whether Defendants' current and future use of the Infringing Marks constitutes a violation of the Ted Stevens Olympic and Amateur Sports Act.

75.     Defendants' conduct has been and continues to be willful, deliberate, and in bad faith, with malicious intent to trade on the goodwill associated with the Future Games Marks.

76.     By its conduct, Defendants have caused USOPC damage and irreparable injury for which it has no adequate remedy at law, and Defendants will continue to do so unless restrained and enjoined by this Court from further infringing the Future Games Marks and confusing the public.

77.     On information and belief, Defendants have and will continue to receive revenues and profits as a result of its infringing use, to which Defendants are not entitled, and the USOPC has suffered damages as a result of Defendants' unlawful conduct, for which Defendants are responsible.

**SECOND CAUSE OF ACTION**
**Trademark Infringement of Future Games Marks - 15 U.S.C. § 1114**

78.     The allegations in all preceding paragraphs are incorporated herein by reference.

79.     The USOPC owns several federal trademark registrations for the Future Games

Marks as set forth above.

80.     At all relevant times herein, Defendants have had actual and/or constructive

knowledge of these registered marks.

81.     Defendants' unauthorized commercial use and intended future unauthorized

commercial use of the Infringing Marks as described above is likely to cause confusion,

deception, and mistake by creating the false and erroneous impression that their business, goods

and/or services are approved, sponsored, endorsed or are in some other way connected or

affiliated with the USOPC and/or the Olympic Games, and, accordingly, constitutes infringement

of the Future Games Marks.

82.     Defendants' use of the Infringing Marks on the goods identified in its federal

trademark applications is and will continue to be without the authorization of the USOPC and

constitutes infringement of the USOPC's Future Games Marks.

83.     The Infringing Marks are likely to cause confusion, mistake, and deception

among the consumers as to the origin and quality of the products bearing the Infringing Marks,

as consumers are likely to believe that Defendants' products and activities are authorized by,

licensed or endorsed by, or associated with the USOPC, its affiliates, and/or the Olympic Games.

84.     An actual and live controversy has arisen and currently exists between the parties

regarding whether Defendants' current use and intended use of the Infringing Marks constitutes

trademark infringement of the Future Games Marks.

85.     Defendants' conduct has been and continues to be willful, deliberate, and in bad faith, with malicious intent to trade on the goodwill associated with the Future Games Marks.

86.     By its conduct, Defendants have caused USOPC damage and irreparable injury for which it has no adequate remedy at law, and Defendants will continue to do so unless restrained and enjoined by this Court from further infringing the Future Games Marks and confusing the public.

87.     On information and belief, Defendants have and will continue to receive revenues and profits as a result of its infringing use, to which Defendants are not entitled, and the USOPC has suffered damages as a result of Defendants' unlawful conduct, for which Defendants are responsible.

**THIRD CAUSE OF ACTION**
**Unfair Competition and False Designation of Origin**
**15 U.S.C. § 1125(a)**

88.     The allegations in all preceding paragraphs are incorporated herein by reference.

89.     The USOPC owns several federal trademark registrations for the Future Games Marks as set forth above. The USOPC also owns common law rights in the Future Games Marks, by virtue of, *inter alia*, the extensive use of said marks by the USOPC and its affiliates, as well as vast international publicity and media related to the same. The Games Marks are also associated with, and point unambiguously to, the USOPC, its affiliates, and the institution of the Olympic Games.

90.     Given the close similarity/near identity of the Infringing Marks to the Future Games Marks, Defendants' current use and intended use of the Infringing Marks constitutes and will constitute a false designation of origin, false or misleading description of facts, and false or misleading representations of fact tending wrongfully and falsely to describe or represent a

connection or affiliation with the USOPC and/or the Olympic Games in violation of 15 U.S.C.

§1125(a). Consumers are likely to be confused, mistaken or deceived as to the affiliation,

association or connection of Defendants' business activities with the USOPC, its affiliates,

and/or the Olympic Games.

91.     Defendants' use of the Infringing Marks on the goods identified in its intent-to-

use applications is and will continued to be without the authorization of the USOPC, and

constitutes false advertising and unfair competition.

92.     The Infringing Marks are likely to cause confusion, mistake, and deception

among the consumers as to the origin and quality of the products bearing the Infringing Marks,

as consumers are likely to believe that Defendants' products and activities are authorized by,

licensed or endorsed by, or associated with the USOPC, its affiliates, and/or the Olympic Games.

93.     An actual and live controversy has arisen and currently exists between the parties

regarding whether Defendants' use of the Infringing Marks constitutes false advertising and

unfair competition under 15 U.S.C. § 1125.

94.     Not only will the USOPC be irreparably injured because of its loss of goodwill

and reputation if Defendants continue to use the Infringing Marks, the USOPC will suffer

damages as a result of such conduct.

95.     Defendants' conduct has been and continues to be willful, deliberate, and in bad

faith.

96.     By its conduct, Defendants have caused USOPC damage and irreparable injury

for which it has no adequate remedy at law, and Defendants will continue to do so unless

restrained and enjoined by this Court from further diluting the Future Games Marks.

97.     On information and belief, Defendants have and will continue to receive revenues and profits as a result of its infringing use, to which Defendants are not entitled, and the USOPC has suffered damages as a result of Defendants' unlawful conduct, for which Defendants are responsible.

**FOURTH CAUSE OF ACTION**
**Deceptive Trade Practices – Colorado Consumer Protection Act, C.R.S. § 6-1-101 *et seq***

98.     The allegations in all preceding paragraphs are incorporated herein by reference.

99.     Defendants are and will continue to engage in unfair and deceptive trade practices through the use of the Infringing Marks.

100.    Given the close similarity/near identity of the Infringing Marks to the Future Games Marks, Defendants' use of the Infringing Marks is likely to cause confusion, or to cause mistake, or to deceive the purchasing public, potential consumers, and actual consumers, whereby they would be led to mistakenly believe that Defendants and Defendants' goods are affiliated with, related to, sponsored by, or connected with the USOPC and/or the Olympic Games.

101.    Such conduct by Defendants would constitute a deceptive trade practice, pursuant to Colo. Rev. Stat. § 6-1-105, including (b) and (c).

102.    Defendants' use of the Infringing Marks on the goods identified in its intent-to-use applications is and will continue to be without the authorization of the USOPC, and constitutes unfair trade practice under Colo. Rev. Stat. § 6-1-105, including (b) and (c).

103.    The Infringing Marks are likely to cause confusion, mistake, and deception among the consumers as to the origin and quality of the products bearing the Infringing Marks, as consumers are likely to believe that Defendants' products and activities are authorized by, licensed or endorsed by, or associated with the USOPC.

104.    An actual and live controversy has arisen and currently exists between the parties regarding whether Defendants' use of the Infringing Marks would constitute unfair trade practices.

105.    Defendants' conduct has been and continues to be willful, deliberate, and in bad faith.

106.    By its conduct, Defendants have caused USOPC damage and irreparable injury for which it has no adequate remedy at law, and Defendants will continue to do so unless restrained and enjoined by this Court.

107.    On information and belief, Defendants have and will continue to receive revenues and profits as a result of its unfair and deceptive conduct, to which Defendants are not entitled, and the USOPC has suffered damages as a result of Defendants' unlawful conduct, for which Defendants are responsible.

## FIFTH CAUSE OF ACTION
### Trademark Infringement and Unfair Competition Colorado Common Law

108.    The allegations in all preceding paragraphs are incorporated herein by reference.

109.    This is a claim for common law unfair competition. Defendants' conduct trades on USOPC's valuable intellectual property rights in the extremely well-known Future Games Marks.

110.    Defendants' filing of the Infringing Applications and current and intended use of the Infringing Marks constitutes trademark infringement and unfair competition under the common law of Colorado. Such actions constitute use in commerce of an identical and confusingly similar mark in connection with the sale, offering for sale, distribution, and advertising of products and/or services in a manner likely to cause confusion, mistake, and

deception as to the source or origin of Defendants' products, or the affiliation, sponsorship, or other relationship between the parties.

111.    Defendants' use of the Infringing Marks on the goods identified in its intent-to-use applications is and will be without the authorization of the USOPC, and constitutes unfair competition and infringement of the USOPC's Future Games Marks.

112.    The Infringing Marks are likely to cause confusion, mistake, and deception among the consumers as to the origin and quality of the products bearing the Infringing Marks, as consumers are likely to believe that Defendants' products and activities are authorized by, licensed or endorsed by, or associated with the USOPC, its affiliates, and/or the Olympic Games.

113.    An actual and live controversy has arisen and currently exists between the parties regarding whether Defendants' use of the Infringing Marks constitutes unfair competition and trademark infringement of the Future Games Marks.

114.    Defendants' conduct has been and continues to be willful, deliberate, and in bad faith, with malicious intent to trade on the goodwill associated with the Future Games Marks.

115.    Defendants' deceptive trade practices have had and will continue to have a significant negative impact on the public as actual and potential consumers of USOPC's products and services.

116.    By its conduct, Defendants have harmed and deceived the public and have inflicted damage and irreparable injury upon the USOPC for which it has no adequate remedy at law, and Defendants will continue to do so unless restrained and enjoined by this Court from further infringing the Future Games Marks and confusing the public.

## THE SIXTH CAUSE OF ACTION
### Declaratory Judgment
### The Challenged Games Marks Registrations are Valid and Enforceable

117.    The allegations in all preceding paragraphs are incorporated herein by reference.

118.    In the Cancellation Proceedings, PUMA SE claims that the registrations for the Challenged Games Marks Registrations are invalid and should be cancelled.

119.    Specifically, PUMA SE claims that the Challenged Games Marks Registrations are merely descriptive, and, as such, the Challenged Games Marks Registrations should be cancelled.

120.    The primary significance of TOKYO 2020, BEIJING 2022, and PARIS 2024 is a reference to the Olympic games, and thus these marks are inherently distinctive trademarks for the USOPC and its affiliates.  The USOPC and its affiliates have a long tradition of adopting a brand name for a particular Olympic Games that combines the host city and year, such that the general public views the TOKYO 2020, BEIJING 2022, and PARIS 2024 designations as source identifies for the USOPC and its affiliates.

121.    Furthermore, in the '583 Cancellation, PUMA SE claims that the USOPC has abandoned U.S. Registration No. 5,216,935 for the TOKYO 2020 mark, and as such, the '935 Registration should be cancelled.

122.    The USOPC has not abandoned the '935 Registration because it is currently using and/or intends to resume use of the TOKYO 2020 marks in connection with the upcoming Summer Olympic Games, which are scheduled for the summer of 2021. *See* 15 U.S.C.  §1127.

123.    Any non-use of the TOKYO 2020 marks constitutes excusable non-use due the postponement of the Olympic Games due to the Covid-19 world health crisis. *See* 15 U.S.C.

§1141k(b)(2). PUMA's cynical attempt to take advantage of the pandemic to wrest longstanding rights benefitting Team USA athletes should be repudiated.

124.    In fact, PUMA SE admits in the TOKYO 2020 Cancellation that the goods covered by the registrations for the TOKYO 2020 marks "will be provided" at the corresponding Olympic Games. Exhibit M, ¶ 24.

125.    In the BEIJING 2022 Cancellation, PUMA SE claims that the USOPC has abandoned the BEIJING 2022 mark, and as such the registration should be cancelled.

126.    The USOPC has not abandoned the BEIJING 2022 mark as it is currently using and/or intends to use the BEIJING 2022 mark in connection with the upcoming BEIJING 2022 Winter Olympic Games. *See* 15 U.S.C. §1127.

127.    In fact, PUMA SE admits in the '682 Cancellation that the goods covered by the registrations for the BEIJING 2022 marks "will be provided" at the corresponding Winter Olympic Games. Exhibit N at ¶ 24.

128.    An actual and live controversy has arisen and currently exists between the parties regarding the validity Challenged Games Marks Registrations.

129.    Pursuant to 28 U.S.C. § 2201, the USOPC therefore requests that the Court declare that the USOPC has not abandoned the '935 Registration for TOKYO 2020, has not abandoned the '721 Registration for BEIJING 2022, that the Challenged Games Marks Registrations are not descriptive, and that the Challenged Games Marks Registrations are valid and enforceable.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the USOPC demands a trial by jury on all issues so triable.

## **REQUEST FOR RELIEF**

WHEREFORE, the USOPC prays for judgment against Defendants as follows:

A.      An order that Defendants' current use and intended future use of the Infringing Marks constitutes and will constitute a violation of the Ted Stevens Olympic and Amateur Sports Act;

B.      An order that Defendants' current use and intended future use of the Infringing Marks constitutes and will constitute trademark infringement prohibited by the Lanham Act;

C.      An order that Defendants' current use and intended future use of the Infringing Marks constitutes and will constitute false advertising and unfair competition prohibited by the Lanham Act;

D.      An order that Defendants' current use and intended future use of the Infringing Marks constitutes and will constitute unfair competition under Colo. Rev. Stat. § 6-1-113;

E.      An order that Defendants' current use and intended future use of the Infringing Marks constitutes and will constitute trademark infringement and unfair competition under Colorado common law;

F.      A declaration that the USOPC has not abandoned the '935 Registration for the mark TOKYO 2020;

G.      A declaration that the USOPC has not abandoned the '721 Registration for the mark BEIJING 2022.

H.      A declaration that the Challenged Games Marks Registrations are not merely descriptive;

I.      A declaration that the Challenged Games Marks Registrations are valid and enforceable;

J.      An order dismissing the Cancellation Proceedings pending before the TTAB;

K.      An order that Defendants and any companies or business entities under their control, their employees, agents, successors and assigns, and all those persons in active concert or participation with them, are enjoined and restrained from: commercially using the Infringing Marks or any confusingly similar variation of the Future Games Marks;

L.      An order directing PUMA SE to abandon its Infringing Applications;

M.      Award USOPC's costs of this suit and its reasonable attorneys' fees in accordance with 15 U.S.C. § 1117, C.R.S. § 6-1-113, and other applicable Colorado law;

N.      Award USOPC trebled damages for willful infringement;

O.      Award USOPC punitive damages under applicable Colorado law;

P.      Award USOPC prejudgment and post-judgment interest as recoverable under statute and common law on all sums; and

Q.      Award such other and further relief as the Court may deem just, proper, and equitable under the circumstances.

Dated: February 23, 2021

Respectfully submitted,

*/s/ Ryan J. Fletcher*
Ryan J. Fletcher, Ph.D.
Kristen M. Geary
**MERCHANT & GOULD P.C.**
1801 California St., Suite 3300
Denver, CO 80202
Telephone: 303.357.1670
Facsimile: 612.332.9081
rfletcher@merchantgould.com
kgeary@merchantgould.com

Scott W. Johnston
Lindsay Jones
**MERCHANT & GOULD P.C.**
150 South Fifth Street, Suite 2200
Minneapolis, MN 55402
Telephone: 612.332.5300
Facsimile: 612.332.9081
sjohnston@merchantgould.com
ljones@merchantgould.com

***Attorneys for Plaintiff***
***U.S. Olympic and Paralympic Committee***